UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NATHANIEL LITTLE,

    Plaintiff,

v.                                                                          2:10CV35

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Nathaniel Little ("Little" or "plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. By order filed March 23, 2010, this action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the final decision of the Commissioner be affirmed.

### I. PROCEDURAL BACKGROUND

On February 14, 2006, Little filed an application for DIB, alleging disability beginning July 7, 2004. (R. 74-78). The Commissioner denied his application initially (R. 46-49), and upon reconsideration, (R. 51-53). Little made a timely request for an administrative hearing, (R. 54), which was conducted October 1, 2007, (R. 23-40).

On November 30, 2007, Administrative Law Judge ("ALJ") Harry H. Barr found that plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for DIB. (R. 11-19). On November 20, 2009, the Appeals Council denied review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), on January 15, 2010, Little filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Little was born on July 21, 1964, and is considered a "younger individual" pursuant to 20 C.F.R. § 404.1563(c). (R. 17). Plaintiff testified that he is 5'7" and weighs 175 pounds. (R. 27). He has a high school education and completed two years of college. (R. 26). He was employed as a driver for a medical supply company from 1996 to 2000. (R. 27). Plaintiff was last employed as a correctional officer. In July 2004, plaintiff fell and injured his back while on the job at the correctional facility. (R. 27).

Plaintiff experienced back pain prior to the fall at work in July 2004. MRI's were performed on plaintiff in June of 2002, and August of 2004. The August 2004 MRI showed a small to moderate central disk protrusion at L5-S1, improved compared to the June 2002 MRI, and a L4-5 moderate central and left disk protrusion which had not changed significantly since the June 2002 MRI. (R. 143). Beginning in of 2004, plaintiff received several fluoroscopically guided lumbar translaminar epidural steroid injections. (R. 145). Plaintiff also underwent physical therapy. (R. 281-86).

On October 13, 2004, Dr. Joseph Koen, M.D., noted that plaintiff had "derived, at best, moderate improvement" from the steroid injections and, despite remaining "fairly inactive," plaintiff

2

continued to have "significant episodes of low back pain." (R. 194). Dr. Koen further noted that plaintiff appeared to have failed conservative management and would likely require surgery. (R. 194). Doctors later determined that plaintiff required surgery, and on January 13, 2005, Little underwent L4-5, L5-S1 laminectomies, posterior lumbar interbody fusion, pedicle screw stabilization, and arthrodesis. (R. 146-52).

One month following surgery, plaintiff was experiencing some low back discomfort, but had normal strength and straight leg-raising was negative. (R. 186). Dr. Koen indicated that plaintiff was doing well and would continue in a lumbar brace for an additional two months and slowly increase his activity level. (R. 186). Dr. Koen's later notes regarding Little's postoperative progress indicate that Little continued to experience some low back pain, but the pain was different than the preoperative pain. Little's strength remained normal, although Dr. Koen indicated that Little's progress was slow. (R. 176, 177, 178, 181). Plaintiff continued with a physical therapy regimen after surgery. (R. 247-71; 276-80).

One year after surgery, Little complained that his legs tended to buckle, (R. 169), and in March 2006, he fell while walking down stairs due to his knees buckling, (R. 168). EMG/NCV studies of the left knee performed in June 2006 had normal findings, with no evidence of lumbar radiculopathy or peripheral nerve injury in the left leg. (R. 160).

On August 4, 2005, plaintiff underwent a functional capacity evaluation. (R. 288). As described in the report, "[d]ue to [plaintiff's] lack of full physical effort and some degree of symptom magnification," the evaluator was unable to provide an accurate estimate of plaintiff's physical abilities and limitations. (R. 289). The report indicates that Little's subjective reports of pain were inconsistent with clinical observations and that "Little can do more at times than he currently states

3

or perceives." (R. 289). Plaintiff underwent a second functional capacity evaluation over a two-day period in January 2006. The results showed that plaintiff was capable of functioning in the light to medium level of exertion. (R. 272). In July 2006, Dr. Koen opined that, considering both plaintiff's back and left knee complaints, he "would follow the recommendations" as given by the Functional Capacity Evaluation which concluded that plaintiff could perform work in the light to medium category. (R. 159).

On March 22, 2006, plaintiff fell down stairs and tore his Achilles tendon. Plaintiff was placed on crutches and an MRI was ordered. The MRI was evaluated by Paul D. Warren, M.D., who decided to place plaintiff in a cast (R. 321-23), and then in a fracture boot (R. 319). By July 2006, Dr. Warren reported that plaintiff was doing "remarkably well," and advised plaintiff to continue his strengthening exercises and avoid any running activities for at least six months. (R. 315-16).

Plaintiff was referred to Parimal Soni, M.D., a state agency physician, for a consultative examination. Dr. Soni examined plaintiff in November 2006. (R. 230). Little reported that he was experiencing severe low back pain, back spasms, pain in his left knee, and problems with his left Achilles tendon. Plaintiff indicated that he could not sit or stand for long and walks with the assistance of a cane. (R. 230). Dr. Soni noted the following impressions: status post-spinal fusion with chronic lower back pain; chronic lower back pain; chronic knee pain; and osteoarthritis. (R. 233). Dr. Soni noted that plaintiff's gait was unsteady and that he requires the assistance of a cane. Dr. Soni concluded that "[o]verall, this gentleman has severe impairment." (R. 233).

Also in November 2006, Neil Novin, M.D., a state agency physician specializing in orthopaedic surgery, reviewed plaintiff's records and opined that plaintiff had the physical residual functional capacity ("RFC") to perform light work. Dr. Novin opined that plaintiff could

4

occasionally lift and/or carry twenty pounds, and frequently lift and/or carry ten pounds; stand and/or walk for a total of at least two hours in an eight-hour workday; sit a total of six hours in an eight-hour workday; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds. (R. 236-46). Dr. Novin also opined that there were discrepancies between plaintiff's claims and the observations of plaintiff's treating orthopaedic and neuro surgeons, as well as between the treating surgeons and Dr. Soni. (R. 244). According to Dr. Novin, these discrepancies "leave[] much to be desired" and caused him to question Little's credibility. (R. 244). Upon review of Dr. Soni's report, Dr. Novin also noted that it was incomplete in that the prognosis section contained numerous omissions and corrections. (R. 244).

Antonio Quidgley-Nevares, M.D., examined plaintiff in January 2007 for his complaints of left hip and thigh pain. (R. 299-301). Dr. Quidgley-Nevares recommended that plaintiff continue his pain medications and continue physical therapy. Plaintiff was scheduled for a left sacroiliac joint injection, which was performed in January 2007. (R. 298-300).

In 2007, Dr. Warren ordered an MRI of plaintiff's left knee, which was performed in March 2007. The MRI showed a large medial meniscus tear. (R. 306-09). Dr. Warren referred Little to Sheldon L. Cohn, M.D., for a further evaluation of Little's knee. Dr. Cohn examined plaintiff and recommended an arthroscopic debridement of plaintiff's knee. (R. 367). Dr. Cohn opined that "[w]ith regard to his knee, I would restrict him from crawling, squatting, climbing or lifting over 40 pounds." (R. 368).

In April 2007, Leopold Moreno, M.D., a state agency physician, completed an RFC assessment and opined that that plaintiff could occasionally lift and/or carry twenty pounds, and frequently lift and/or carry ten pounds; stand and/or walk for a total of at least two hours in an eight-

hour workday; sit a total of six hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl. (R. 347-54). In his assessment, Dr. Moreno found plaintiff's statements regarding his symptoms and their effects on his functioning only partially credible. (R. 353).

In April 2006, plaintiff stated on forms filed in conjunction with his application for benefits that his activities include walking and feeding pets, and taking them to the veterinarian, (R. 106); cleaning one hour every day, washing laundry for three hours once a week, mowing three and one-half to four hours at a time, (R. 107); coaching two days a week, going to church, and going to sports games, (R. 109). Plaintiff stated that he is able to lift twenty-five pounds, but could only walk twenty-five to fifty feet before needing to rest. (R. 110). Plaintiff indicated that he was prescribed crutches. (R. 111).

At the hearing, plaintiff testified that he is unable to assist with household chores and no longer can coach his son's sports teams. (R. 28). Plaintiff testified that he experiences pain in the "dead center" of his back, (R. 29), as well as in his hip and knee (R. 30-31). Plaintiff manages the pain with medication throughout the day, physical therapy two to three time a week, hot baths, and a TENS Unit prescribed by Dr. Quidgley-Nevares. (R. 29-30). Little testified that he can walk fifteen to twenty-five feet, (R. 32); stand no more than thirty minutes at a time, (R. 33); sit for fifteen minutes, (R. 33); and needs assistance with getting out of the tub and getting dressed, (R. 35).

Robert Edwards was called to testify as an impartial vocational expert ("VE"). Edwards testified that plaintiff's former job as a correctional officer involved semi-skilled work at a medium exertional level, and his former job as a medical supply delivery driver involved semi-skilled work at a heavy exertional level. (R. 37). In response to a hypothetical framed by the ALJ, Edwards testified that jobs were available in the national economy for an individual of plaintiff's age, education, and

work experience who is limited to light work [1] that requires standing/walking a total of two hours in an eight-hour workday; that allows for sitting up to eight hours in an eight-hour workday; that does not require the use of foot or leg controls; that requires only occasional stooping, kneeling, crouching, or balancing; and does not require any climbing or crawling. (R. 37-38). Edwards identified unskilled and light work such as information clerk (1,180 locally/236,000 nationally), cashier (825 locally/165,000 nationally), and office clerk (1,375 locally/265,000 nationally). The VE further testified that such positions allowed for alternating between sitting and standing. (R. 38). In response to a question posed by Little's counsel, Edwards indicated that the positions he identified would not permit a person to take two breaks per day lasting thirty to forty minutes in order to use a TENS Unit. (R. 39).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether such decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

---

[1] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[2] "The issue . . . therefore, is not whether [the plaintiff] is disabled, but whether the ALJ's finding that [the plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

(quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for a period of disability and DIB under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act.

> The Social Security Regulations define "disability" as the:
>
> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[3] 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes

---

[3] The Administration may satisfy its burden by showing that considering the plaintiff's RFC, age, education and work experience, he is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a VE to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.).

disability. This analysis is set forth in 20 C.F.R. § 404.1520. The burden of proof and production rests on the plaintiff during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.  The ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) plaintiff has not engaged in substantial gainful activity since July 7, 2004 (the alleged onset date of disability); (2) plaintiff has severe impairments of lumbar degenerative disc disease and left knee degenerative joint disease; (3) plaintiff's impairments (or combination of impairments) do not meet one of the listed impairments in Appendix 1; (4) plaintiff has the RFC to perform light work, but with some limitations, and is not capable of performing past relevant work; and (5) there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (R. 13-19).

In his motion for summary judgment, Little alleges generally that the ALJ's decision is not supported by substantial evidence, and also alleges the following specific errors: (1) the ALJ failed to present a complete hypothetical question to the VE because he failed to incorporate into plaintiff's

RFC the limitation that plaintiff uses a cane[4]; and (2) the ALJ failed to consider Little's complaints of pain. In essence, Little contends that the ALJ failed to take into account all of Little's limitations in determining his RFC.

B. **The ALJ properly evaluated the evidence bearing on Little's RFC.**

Little contends that the ALJ erred in determining plaintiff's RFC, which is defined as the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see SSR 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must then determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). After doing so, the ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform his past relevant work. 20 C.F.R. § 404.1545(a)(5)(i). If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an adjustment to any other work that exists in the national economy. 20 C.F.R. § 404.1545(a)(5)(ii).

At the administrative hearing level, the ALJ has the responsibility of determining RFC. 20 C.F.R. § 1546(c). RFC is determined by considering all the relevant medical and other evidence[5] in

---

[4] At the hearing, plaintiff's counsel did not question the ALJ's decision to not include the use of a cane in the hypothetical. Instead, when afforded the opportunity to question the VE, plaintiff's counsel modified the hypothetical to include another restriction—lying down for thirty to forty minutes twice a day in order to use at TENS unit. (R. 38-39). The VE responded that such a restriction would eliminate work. (R. 39). Little does not pursue this line of argument in his motion for summary judgment; however, to the extent Little contends that the ALJ should have included such a restriction, the Court has reviewed the evidence and finds that the record does not establish that his use of a TENS unit for forty minutes twice a day is medically necessary.

[5] "Other evidence" includes statements or reports from the claimant, the claimant's treating or nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

11

the record. 20 C.F.R. §§ 404.1545(a)(3) and 404.1527(b). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairments(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).

In this case, the ALJ found that Little has the RFC to perform a range of light work with the following limitations: (1) standing or walking for a total of two hours in an eight-hour workday; (2) sitting for eight hours; (3) lifting, carrying, pushing, or pulling twenty pounds occasionally and ten pounds frequently; (4) occasional stooping, kneeling, crouching, and balancing; (5) no crawling or climbing; and (6) no foot or leg controls. (R. 15).

1. **Use of a Cane**

In November 2006, Dr. Parimal Soni conducted a consultative medical examination of Little. In his report, Dr. Soni opined that Little "has severe impairment." (R. 233). Dr. Soni further noted that plaintiff used a cane "all the time even for short distances" and, without the assistance of a cane, Little could "hardly walk a few steps without some imbalance." (R. 233).

When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the plaintiff's RFC based on all evidence in the record and a fair description of all the plaintiff's impairments so that the VE can offer "relevant or helpful" testimony. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Little contends that the ALJ essentially discounted Dr. Soni's opinion when calculating plaintiff's RFC and erred in omitting the need to use an assistive device from the hypothetical presented to the VE. Pl.'s Mem. at 17.

As stated previously, the ALJ has the responsibility of determining RFC. As part of the determination, the ALJ must evaluate every medical opinion contained in the record. Generally, the

12

opinion of a treating physician is accorded more weight than that of a non-treating or non-examining medical source. 20 C.F.R. § 404.1527(d)(1)-(2). Under the federal regulations and Fourth Circuit caselaw, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

In his decision, the ALJ found, after considering the evidence of record, that plaintiff is capable of performing light duty work. The expressly ALJ acknowledges that, due to his left knee impairment, plaintiff is limited in his ability to stand and walk. Taking that limitation into account, the ALJ made the following determination:

> The undersigned notes that there is no apparent medical reason why [Little] is unable to sit for prolonged periods. [Little] is able to use both hands and upper extremities to perform the light lifting and other job tasks associated with sedentary or light work as he has normal upper extremity strength and functioning. He is able to stand and walk effectively for at least limited periods. [Little] may have occasional postural limitations due to his combined impairments. [Little's] subjective discomfort, alleged depression, and alleged side effects from medication do not result in any significant nonexertional limitations. [He] is fully capable of understanding, carrying out, and remembering job instructions and tasks.

(R. 17). In making the RFC determination, the ALJ cites to the opinions of plaintiff's treating physicians—Dr. Koen and Dr. Cohn—which indicate that Little is capable of performing sedentary work or a limited range of light work. (R. 16-17). The Court notes that neither of these treating physicians prescribed the permanent use of an ambulatory device such as a cane. The ALJ further references the RFC assessments performed by consulting physicians Dr. Novin and Dr. Moreno, as well as a Psychiatric Review Technique completed by Daniel Walter, PsyD., L.C.P.[6]—each of whom

---

[6] In his report dated April 16, 2007, Dr. Walter found Little's statements regarding his limitations to be not credible. Dr. Walter further opined that plaintiff's depression was not a severe impairment. (R. 346).

13

found that plaintiff has the RFC to perform work. (R. 17). The ALJ states that he considered these opinions and accorded them significant weight. Again, none of these assessments include the limitation that plaintiff use a cane.

Plaintiff argues that because Dr. Soni "found that [plaintiff] used a cane for ambulation and balance" the use of the cane was therefore "medically required." First, the Court notes the premise of Little's argument—that Dr. Soni's observations concerning his use of the cane equate to a finding of medical necessity—is not established by the record. Second, in his report the ALJ states that he considered the opinion evidence as required by the regulations and policy statements. He made specific reference to the opinions of plaintiff's treating physicians and the opinions of the non-examining consultants. One of these opinions—that of Dr. Novin—explicitly calls into question Dr. Soni's observations about plaintiff's physical abilities. Specifically, Dr. Novin notes that Dr. Soni's report was non-specific, contained misinformation, and is incomplete. (R. 242). The ALJ also cites to "[a] prior functional capacity evaluation" that "indicated symptom magnification" but notes that subsequent records indicate that plaintiff "has full weight-bearing status despite his left knee impairment and ankle injury." (R. 17).

Upon review of the medical record, the restrictions and observations contained in Dr. Soni's report are inconsistent with the other evidence in the record. There is substantial evidence to support the ALJ's determination of Little's RFC and the ALJ did not err in failing to include the use of a cane in the hypothetical posed to the VE. See 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a while, the more weight we will give to that opinion."); Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (finding that substantial evidence supported the ALJ's decision that the plaintiff was not disabled where the hypothetical included all limitations

that were supported by the record as a whole.).

## 2. The ALJ correctly evaluated plaintiff's complaints of pain.

Also in step four of the analysis, the ALJ determined that "[a]fter considering the evidence of record, the undersigned finds that [Little's] medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that [Little's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 16). In addition, the ALJ found inconsistencies between Little's testimony at the hearing and the forms he submitted in April 2006. (R. 17). In his motion for summary judgment, plaintiff contends that the ALJ's findings with regard to plaintiff's subjective complaints of pain and limitations are contrary to the medical evidence contained in the record.

In deciding whether a plaintiff is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 404.1529(a). A plaintiff's subjective statements about pain or other symptoms alone are not enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, determining whether a person is disabled by pain or other symptoms is a two-step process. First, the plaintiff must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594 and 595. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

15

After the plaintiff has satisfied the first step, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the plaintiff's history, including his own statements, id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," 20 C.F.R. § 404.1529(c)(2); and (3) other evidence submitted by the plaintiff relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, 20 C.F.R. § 404.1529(c)(3). In evaluating the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work, the ALJ must consider whether inconsistencies exist and the extent to which there is conflict between the plaintiff's statements and the other evidence. 20 C.F.R. § 404.1529(c)(4). According to the regulations, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the medical evidence and other evidence." Id.

In the present case, the ALJ followed the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit. As to the first step, the ALJ found that Little's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms . . . ." (R. 16). In other words, Little satisfied his threshold obligation under the two-part inquiry.

With regard to the second step, however, the ALJ found that Little's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" and that

16

"[t]he objective medical evidence does not support [Little's] allegations of disabling pain or functional problems." (R. 16). In so finding, the ALJ considered the evidence of record and, while acknowledging that Little is limited in his ability to stand and walk, found that the objective medical evidence as well as plaintiff's own written statements did not support his allegations of disabling pain or functional problems. The Court finds that the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating Little's pain, and supported his decision with substantial evidence.

To the extent Little contends that the ALJ erred in evaluating his credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). Here, the ALJ performed the required analysis and articulated a number of reasons for not fully crediting plaintiff's statements. There are no exceptional circumstances which would warrant disregarding the ALJ's credibility determination. Accordingly, the Court finds the ALJ properly evaluated Little's credibility.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be affirmed.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 22, 2010

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Charlene A. Morring
Montagna Klein Camden LLP
425 Monticello Avenue
Norfolk, VA 23510

George M. Kelley, III
Virginia Van Valkenburg
U.S. Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

_____, 2010